# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

SATCO PRODUCTS, INC.

          *Plaintiff*,

   v.

SEOUL SEMICONDUCTOR CO., LTD, and
SEOUL SEMICONDUCTOR, INC.

          *Defendants*.

Case No. 1:21-cv-00643-TCB

## SEOUL SEMICONDUCTOR CO., LTD'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO USE ALTERNATIVE SERVICE PURSUANT TO FRCP 4(f)(3)

# TABLE OF CONTENTS

I.   INTRODUCTION AND BACKGROUND ................................... 1

II.  ARGUMENT ............................................................. 2

    A.  The Hague Convention Is Mandatory for Service of
        Process on SSC ..................................................... 2

    B.  There Is No Basis for Permitting Alternative Service
        Under FRCP 4(f)(3) ............................................... 6

        1.  Service on U.S. Counsel is Not Appropriate
            Where Counsel Has Not Been Authorized to
            Accept Service for SSC ................................... 6

        2.  Service on SSI Is Insufficient Because SSI Is Not
            Authorized to Accept Service on Behalf of SSC ........... 8

        3.  Email and Other Means of Alternative Service
            Under Rule 4(f)(3) Should Only Apply in
            Situations Involving Good Cause .............................. 9

        4.  There is No Good Cause for Satco to Seek
            Alternative Service Under Rule 4(f) ......................... 15

III. CONCLUSION ........................................................ 18

# TABLE OF AUTHORITIES

**Federal Cases**

*Backjoy Orthotics LLC v. Forvic International, Inc.*,
    2016 WL 7664290 (M.D. Fla. 2016) .......................................................3

*Ballew v. Roundpoint Mortgage Servicing Corp.*,
    491 Fed. Appx. 25 (11th Cir. 2012).....................................................18

*Boone-Coleman v. SCA, Inc.*,
    2019 WL 5295567 (M.D. Ala. 2019).......................................................6

*Chanel, Inc. v. Zhixian*,
    2010 WL 1740695 (S.D. Fla. Apr. 29, 2010) ...........................................5

*Codigo Music, LLC v. Televisa S.A. de C.V.*,
    2017 WL 4346968 (S.D. Fla. 2017)..........................................................7

*De Gazelle Group, Inc. v. Tamaz Trading Establishment*,
    817 F.3d 747 (11th Cir. 2016) ................................................................7

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Technology Co., Ltd.*,
    480 F. Supp. 3d 977 (N.D. Ca. 2020).....................................................12

*Fru Veg Marketing, Inc. v. VegFruitWorld Corp.*,
    896 F. Supp. 2d 1175 (S.D. Fla. 2012)...................................................10

*In re Grana y Montero SAA*,
    2019 WL 259778 (E.D.N.Y. Jan. 9, 2019)..............................................12

*In re LDK Solar Securities Litigation*,
    2008 WL 2415186 (N.D. Cal. Jun. 12, 2008).........................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    270 F.R.D. 535 (N.D. Cal. 2010) ............................................................5

*In re Zantac Products Liability Litigation*,
    2020 WL 5501141 (S.D. Fla. 2020).............................................4, 15, 17

*Int'l Designs Corp. LLC v. Qingdao Seaforest Hair Prods. Co., Ltd.*,
    2018 WL 2364297 (S.D. Fla. Jan. 4, 2018).............................................12

*Kipu Sys., LLC v. ZenCharts, LLC*,
    2018 WL 8264634 (S.D. Fla. Mar. 29, 2018).........................................11

*LSG v. Nichia*,
    2019 WL 9633377 (N.D. Ga. Aug. 8, 2019) ....................................14, 17

*Mitchell v. Volkswagen Group of America, Inc.*,
   753 F. Supp. 2d 1264 (N.D. Ga. 2010)....................................................8

*Moore v. McCalla Rayer, LLC*,
   916 F. Supp. 2d 1332 (N.D. Ga. 2013 ....................................................6

*Mueller v. Mueller*,
   2016 WL 10567191 (N.D. Ga. Oct. 7, 2016*)* ........................................17

*Night Owl SP, LLC v. Dongguan Auhua Electronics Co., Ltd.*,
   2019 WL 5084162 (M.D. Fla. 2019) ................................................... 4, 5

*Ogidi-Gbegbaje v. J.B. Hunt Transport, Inc.*,
   2017 WL 4385329 (N.D. Ga. 2017) ........................................................6

*Pardazi v. Cullman Med. Ctr.*,
   896 F.2d 1313 (11th Cir. 1990)............................................................18

*Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting*
   *Countries,* 353 F.3d 916 (11ᵗʰ Cir. 2003)........................................... 7, 10

*Rio Props v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002)...............................................................9

*Tecon Oil Servs. Ltd. v. Ogbonyomi*,
   2006 WL 2947054 (N.D. Ga. 2006) .......................................................8

*Tillotson Corp. v. Supermax Corp.*,
   2008 WL 11336243 (N.D. Ga. May 21, 2008) ................................passim

*U.S. v. The Pub. Warehousing Co.*,
   2017 WL 661580 (N.D. Ga. Feb. 17, 2017)............................................5

*Under Armour, Inc. v. 51nfljersey.com*,
   2014 WL 644755 (S.D. Fla. Feb. 19, 2014) ..........................................10

*United States v. Pub. Warehousing Co. KSC*,
   2017 WL 661580 (N.D. Ga. Feb. 17, 2017)..........................................10

*Volkswagenwerk Aktiengsellschaft v. Schlunk*,
   486 U.S. 695 (1988)..............................................................4, 5, 13, 15

*Yanmar Co., Ltd. v. Baoluli Happy*, No. 1:19-cv-5331-TCB,
   2019 WL 8301092 (N.D. Ga. Nov. 25, 2019) .......................................10

**Rules**

Fed. R. Civ. P. 4(f)(3)............................................................9, 19, 21

Rule 4(f)......................................................................................11

# I.    INTRODUCTION AND BACKGROUND

Satco Products, Inc. ("Satco") is a lighting company that has been involved in numerous patent litigations around the country, both as a plaintiff and a defendant. In its most recent case, Satco alleges that Seoul Semiconductor, Inc. ("SSI"), a U.S. company, and Seoul Semiconductor Co., Ltd. ("SSC"), a Korean corporation, are infringing its U.S. patents. Satco served its complaint on SSI, and counsel for SSI did not challenge such service. However, when Satco requested that the same counsel accept service for SSC, SSI's counsel declined. Exhibit 1, Declaration of Jennifer L. Jonak, ¶4. Not only was counsel without authorization to accept such service, but SSI is the entity that sells accused products in the U.S. and is therefore the appropriate defendant for any U.S. patent claims that Satco has asserted in its complaint.[1] SSC is not a proper defendant in this action, and the allegations in the Complaint attempt to gloss this over by conflating the two corporate defendants. In light of this, counsel explained to Satco that she was not authorized to accept service of the complaint on behalf of SSC.

Instead of even attempting service of the Complaint on SSC through the Korean Central Authority, as the Hague Convention requires, Satco seeks leave

---

[1] SSI still denies that it is infringing Satco's patents. Likewise, in opposing Satco's motion for alternative service, SSC does not waive any claims or defenses that it may have, including its ability to challenge personal jurisdiction.

from this Court to serve SSC under Rule 4(f)(3) via alternative means, such as email, service on SSI, or service through counsel. *See* Dkt. 27. The cases on which Satco relies are almost all ones in which the Hague Convention did not apply or service through the Hague would be too difficult, because the defendant's address was unknown, plaintiff had already attempted service unsuccessfully through the Hague, the defendant was evading service, etc. None of this applies here. This is not a case in which SSC is some fly-by-night defendant who will be difficult to locate. By Satco's own admission, it will only take a few months to accomplish service. The Hague Convention requires that service of process be performed through the Korean Central Authority, and even if it was possible to grant an exception to such service, Satco presents no basis or good cause for such an exception. Precedent from this same district confirms: Satco's motion for leave should be denied.

## II.   ARGUMENT

### A.   The Hague Convention Is Mandatory for Service of Process on SSC

Rule 4(f) of the Federal Rules of Civil Procedure governs the acceptable means of effective service of process as to foreign corporations. Fed. R. Civ. P. 4(f) (a foreign corporation "may be served at a place not within any judicial district of the United States . . . by any internationally agreed means of service that is

reasonably calculated to give notice, such as those authorized by the Hague

Convention on the Service Abroad of Judicial and Extrajudicial Documents").

Korea is a signatory to the Hague Convention. *See Backjoy Orthotics LLC v. Forvic International, Inc.*, 2016 WL 7664290, *4 (M.D. Fla. 2016) ("Both the United States and South Korea are parties to the Hague Convention"). In this case, the Hague Convention prescribes the only effective means of service as to defendant Seoul Semiconductor Co., Ltd., a Korean company. Korea has specifically objected to mail service, under Article 10 of the Hague Convention. *See* Declaration/Reservation/Notification (https://www.hcch.net/en/instruments/ conventions/status-table/notifications/?csid=408&disp=resdn).[2] Service must therefore be performed under Article 5, which requires the documents to be sent and served by the Korean Central Authority and a "[f]ull translation" of any

_____

[2] Korea has also expressly objected to any alternative method of service in a foreign judicial proceeding except service through the Korean Central Authority. *See*, *e.g.*, *Baek v. Radish Media, Inc.*, No. CV 18-7475-RSWL-RAO, 2018 WL 6025843, at *2 (C.D. Cal. Nov. 16, 2018). Korea has a "Law of International Judicial Co-assistance," which requires that any attempt at service from a foreign country shall be rejected if not done with the formalities required under Article 11 of the Act. Article 11 provides that such service must occur through diplomatic channels (Hague Convention) and not directly by a litigation party. Furthermore, Article 15 only permits methods of service requested by a foreign country. *See* Convention Done at the Hague Nov. 15, 1965, T.I.A.S. No. 6638 (Feb. 10, 1969) (available at 1969 WL 97765). Thus, service must be consistent with Korean law, which also requires service through the Korean Central Authority. *See* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/KoreaRepublicof.html.

document to be served. *Id. See also In re Zantac Products Liability Litigation*, 2020 WL 5501141, *5 (S.D. Fla. 2020) ("South Korea's express opposition to Article 10(a) makes the Plaintiff's attempt to serve Defendant Kim by mail insufficient.").

Compliance with the Hague Convention applies in all civil or commercial cases where there is occasion to transmit a judicial or extrajudicial document for service abroad, unless the address of the person to be served is unknown. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 695, 705 (1988) (compliance with the Hague Convention is mandatory when it applies); *Tillotson Corp. v. Supermax Corp. BHD*, 2008 WL 11336243, at *2 (N.D. Ga. May 21, 2008) ("Significantly, however, this court's discretion to permit alternative methods of service is considerably limited in certain circumstances because compliance with the Hague Convention is mandatory when it applies."). "[T]he Hague Convention's silence on a method of service does not make it permissible." *Night Owl SP, LLC v. Dongguan Auhua Electronics Co., Ltd.*, 2019 WL 5084162, *1 (M.D. Fla. 2019).

Here, Satco has not even attempted to serve SSC under the rules prescribed by the Hague Convention. Instead, Satco seeks to circumvent international law by invoking the catch-all provisions of Rule 4(f)(3), which allows for service "by

other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

But Rule 4(f)(3) was never intended to permit this type of end run. If the rule were applied as Satco submits, it would upset international comity and render the Hague Convention superfluous. Rule 4(f)(3) is designed to provide for alternative, court-ordered service under certain limited circumstances—*e.g.*, when the defendant's country is not a signatory to the Hague Convention, *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, 270 F.R.D. 535, 537 (N.D. Cal. 2010), when a foreign government obstructs service, *U.S. v. The Pub. Warehousing Co.*, 2017 WL 661580, at *2 (N.D. Ga. Feb. 17, 2017), or when a defendant's physical address is unknown, *see Chanel, Inc. v. Zhixian*, 2010 WL 1740695, at *2 (S.D. Fla. Apr. 29, 2010). None of these circumstances is present here.

"Permitting a plaintiff to circumvent the provisions of the Hague Convention even though it applies, as the plaintiff seeks to do in its motion, is tantamount to permitting service that contravenes the Constitution." *Night Owl SP, LLC*, 2019 WL 5084162, at *1 (citing Supreme Court in *Volkswagenwerk Aktiengsellschaft*, 486 U.S. at 699). Any service of process in violation of a valid treaty, such as the Hague Convention, would be unconstitutional. *Tillotson Corp.*, 2008 WL 11336243 at *3.

**B.    There Is No Basis for Permitting Alternative Service Under FRCP 4(f)(3)**

There is no basis for permitting alternative service under Rule 4(f) by any of the means that Satco suggests in its motion.

**1.    Service on U.S. Counsel is Not Appropriate Where Counsel Has Not Been Authorized to Accept Service for SSC**

Satco argues that it should be able to serve SSC through the U.S. counsel it has used in other cases, because it would be more economical and less time-consuming than service under the Hague.  But this would be true for every foreign defendant that has ever hired U.S. counsel before.  Here, U.S. counsel has not been authorized to accept service for SSC.  Satco cannot therefore bypass the Hague Convention requirements of service simply by sending it to U.S. counsel.  *See Boone-Coleman v. SCA, Inc.*, 2019 WL 5295567, *3 (M.D. Ala. 2019) ("party must have appointed his attorney as his agent for service of process before personal jurisdiction is obtained over the party by service on his attorney"); *Moore v. McCalla Rayer, LLC*, 916 F. Supp. 2d 1332, 1340 (N.D. Ga. 2013) ("Service upon counsel is ineffectual unless the party has appointed his attorney his agent for service of process."); *Ogidi-Gbegbaje v. J.B. Hunt Transport, Inc.*, 2017 WL 4385329, *3 (N.D. Ga. 2017) (finding service on defendant's attorney insufficient under Rule 4).

In *Codigo Music, LLC v. Televisa S.A. de C.V.*, 2017 WL 4346968, *10-11 (S.D. Fla. 2017), the plaintiff sought to serve a complaint using alternative service under Rule 4(f). The Codigo court confirmed that "almost none of the Courts have permitted service on a foreign defendant solely through service on its domestic counsel under facts akin to the ones at bar, particularly where the plaintiff has not sought to serve the defendant directly as well."

Actual notice is not a substitute for formal service of process. Due process under the United States Constitution requires that there must be "*more than* notice to the defendant . . . there must also be a *basis* for the defendant's amenability to service of summons." *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries,* 353 F.3d 916, 924-25 (11th Cir. 2003) (emphasis in original). The Eleventh Circuit has recognized that "this means there must be *authorization* for service of summons on the defendant," such as a defendant's express consent to service. *Id.* (emphasis in original); *De Gazelle Group, Inc. v. Tamaz Trading Establishment*, 817 F.3d 747 (11th Cir. 2016) (stressing the need for formal service of process despite actual notice of an action by defendant). Without such consent, an entity "is not obliged to engage in litigation unless notified of the action under a court's authority, by formal process." *Id.* (citations and internal quotations omitted).

No such consent or authorization exists in this case, and therefore, service on SSC through U.S. counsel would be improper.

### 2. Service on SSI Is Insufficient Because SSI Is Not Authorized to Accept Service on Behalf of SSC

Service on SSI is also insufficient for service of process on SSC, because SSI and SSC are separate corporate entities and SSI has never been authorized to accept service on behalf of SSC. In *Mitchell v. Volkswagen Group of America, Inc.*, the plaintiff attempted to serve a German defendant (VW-Germany) through service on its U.S. subsidiary. 753 F. Supp. 2d 1264 (N.D. Ga. 2010). This district found such service improper, explaining that under Georgia law, service on an agent of a domestic subsidiary does not constitute proper service on the foreign parent corporation. *Id.* at 1268 ("serving a parent corporation by serving its wholly-owned subsidiary that has not been authorized to accept service of process on behalf of the parent fails to satisfy Georgia law"); *see also Tecon Oil Servs. Ltd. v. Ogbonyomi*, 2006 WL 2947054, *1-2 (N.D. Ga. 2006) (service on domestic subsidiary did not constitute service on the parent company "so long as the Parent had never directed subsidiary or subsidiary's agent to accept service of process on the German parent's behalf") (internal quotations omitted). Where authorization to accept service was lacking from the foreign parent, the *Mitchell* court held that the Hague Convention applied and the summons and complaint needed to be served

abroad. The same result applies here, where SSC has not authorized SSI to accept service on its behalf.

### 3. Email and Other Means of Alternative Service Under Rule 4(f)(3) Should Only Apply in Situations Involving Good Cause

Satco argues that alternative service under Rule 4(f)(3), such as email service, should be just as favored as any other method of service on a foreign defendant, and it should not be required first to attempt service of process through the Hague Convention. Dkt. 27 at 6. Yet the cases on which Satco relies for this proposition involved very different circumstances than those present in this case. Most are trademark cases, where the identity and exact address of an infringer are unknown and difficult to confirm. That is a far cry from this case, where Satco has never denied its ability to locate SSC or determine its physical address (which is easily available on SSC's website and other public records). Other cases cited by Satco involved defendants who were evading service of process – in some cases, for years – or where the defendant was from a country that was not a signatory to the Hague Convention or had an unknown address, and the Hague Convention service procedures did not apply.

For example, in *Rio Props v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002), the defendant was from Costa Rica, which is not a signatory to the Hague Convention, and therefore, the Hague did not apply. The *Rio* defendant also had a

presence in the United States and had been evading the plaintiffs' attempts at service of process. Based on these circumstances, the Ninth Circuit permitted alternative service. Where these factors do not exist, the Eleventh Circuit has distinguished *Rio Props* and denied leave for alternative service. *Prewett*, 353 F.3d at 925.

Satco's other authorities are also inapposite. *See, e.g., United States v. Pub. Warehousing Co. KSC,* No. 1:05-CV-2968-TWT, 2017 WL 661580, *4 (N.D. Ga. Feb. 17, 2017) (granting motion for alternative service only after plaintiffs diligently attempted to serve defendants for six years but Kuwait government obstructed service); *Under Armour, Inc. v. 51nfljersey.com*, No. 13062809-CIV, 2014 WL 644755, *2 (S.D. Fla. Feb. 19, 2014) (Hague Convention did not apply, since address of defendants was unknown); *Fru Veg Marketing, Inc. v. VegFruitWorld Corp.*, 896 F. Supp. 2d 1175 (S.D. Fla. 2012) (defendants in trademark case were from countries that subscribe to the Inter-American Service Convention, which permits service by mail); *Yanmar Co., Ltd. v. Baoluli Happy*, No. 1:19-cv-5331-TCB, 2019 WL 8301092, *1-2 (N.D. Ga. Nov. 25, 2019) (defendants' addresses were unknown and therefore the Hague Convention did not apply, and email was the only method of achieving service); *In re LDK Solar Securities Litigation*, No. C 07-05182-WHA, 2008 WL 2415186, *3 (N.D. Cal.

Jun. 12, 2008) (defense counsel acknowledged that it might be "impossible" for plaintiffs to serve individual foreign defendants in a trademark case, thereby showing difficulty of proceeding through traditional service under the Hague); *Kipu Sys., LLC v. ZenCharts, LLC,* No. 17-24733-CIV, 2018 WL 8264634, at *2 (S.D. Fla. Mar. 29, 2018) (court permitted alternative service on Bulgarian individuals in trademark case where Bulgaria had not objected to email service).

The Advisory Committee notes to Rule 4(f) are instructive. They confirm that "[u]se of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service." Rule 4 Notes, subdivision (f)(1). Therefore, when the Hague Convention applies – which it did not in *Rio* – service under Rule 4(f)(1) should be followed rather than service under 4(f)(1) or 4(f)(3) except under extenuating circumstances. *Id.* (noting that Convention permits court to order provisional or protective measures "in case of urgency").

Exceptions justifying alternative service "don't mean that the court and the plaintiff can regularly circumvent 4(f)(1)" because "[t]hat interpretation would render the Convention optional, which the Advisory Committee's notes make clear is not the case." *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Technology Co., Ltd.*, 480 F. Supp. 3d 977, 986 (N.D. Ca. 2020) (rejecting the view that the methods

identified in the Convention are optional and that service by email may be utilized where the Convention applies).  A plaintiff cannot simply bypass Hague Convention requirements for service and request an alternative means of service, such as email, at the outset and without even so much as attempting service through the Hague, as Satco seeks to do in its motion. This would conflict with the Hague Convention, which is treated as "the supreme law of the land." *Id*. at 985-86 (refusing to approve service by email on China based defendants).  And "although service by email would be faster, it might lead to an unenforceable judgment – an outcome that doesn't seem improbable . . ." *Id*. at 988; *see also In re Grana y Montero SAA*, CV 17-1105-JMA-ARL, 2019 WL 259778,*6 (E.D.N.Y. Jan. 9, 2019) (alternative service under Rule 4(f)(3) was not warranted where plaintiffs failed to make any effort on their own to effectuate service); *Int'l Designs Corp. LLC v. Qingdao Seaforest Hair Prods. Co., Ltd.*, No. 17060431-CIV, 2018 WL 2364297, *3-4 (S.D. Fla. Jan. 4, 2018) (denying motion for alternative service where plaintiffs did not first attempt service under the Hague Convention).

The two most relevant precedents both occurred in this very district, although neither were referenced by Satco in its motion.  The first is *Tillotson Corp. v. Supermax Corp. BHD,* No. 4:07-CV-0193-RLV, 2008 WL 11336243 (N.D. Ga. May 21, 2008). In *Tillotson*, also a patent infringement litigation, the

plaintiff sued several domestic and foreign defendants. *Id.* at \*1. The plaintiff

successfully effected service on some of the defendants, but, despite its attempts,

was unable to effect service on certain defendants from China, Indonesia, and

Malaysia. *Id.* It requested permission to effect service by alternative means,

specifically by electronic mail or facsimile. *Id.* Judge Vining distinguished the

Chinese defendant from the Indonesian and Malaysian defendants because China

(unlike Indonesia and Malaysia) is a signatory to the Hague Convention:

> Significantly, however, this court's discretion to permit alternative methods
> of service is considerably limited in certain circumstances because
> compliance with the Hague Convention is mandatory when it applies.
> *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 695, 705 (1988).
> The Convention applies when the rules of the forum state require transmittal
> of documents abroad to effect service of process. *Id.* at 699–700. The rules
> of this forum require such action to properly effect service of process. The
> United States and China are parties to the Convention, but Indonesia and
> Malaysia are not. . . . The methods of service prescribed by the Hague
> Convention, therefore, apply in this matter with respect to the Chinese
> defendant but not with respect to the Indonesian or Malaysian defendants.
> Consequently, this court's discretion to permit alternative methods of service
> is significantly limited in terms of what may constitute effective service for
> the Chinese defendant, but this court has much wider latitude when it comes
> to permitting alternative methods of service on the Indonesian and
> Malaysian defendants.

*Id.* at \*2. The district court went on to deny the plaintiff's motion as to the Chinese

defendant, and explained that permitting such circumvention of international law

would contravene the Constitution:

> Permitting a plaintiff to circumvent the provisions of the Hague Convention
> even though it applies, as the plaintiff seeks to do in its motion, is

tantamount to permitting service that contravenes the Constitution. *Schlunk*, 486 U.S. at 699 (1988) ("By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies."). It goes without saying that any service in violation of a valid treaty, such as the Hague Convention on Service Abroad, would be unconstitutional. Consequently, this court has no discretion to permit alternative methods that are not provided for in the Convention. Therefore, the plaintiff's request to permit alternative methods of service on the Chinese defendant is denied.

*Id.* at *3.

In *LSG v. Nichia*, No. 1:19-CV-1948-LMM, 2019 WL 9633377 (N.D. Ga. Aug. 8, 2019), this district court reached the same conclusion. The plaintiff argued that it should be permitted to serve Nichia Corporation, a Japanese company, through its U.S. counsel after having already served Nichia's wholly owned U.S. subsidiary. LSG argued, exactly as Satco does, that otherwise it would cost around $16,000 to translate the complaint and up to six months to serve through the Hague Convention in Japan. LSG argued that alternative service would be more expeditious and efficient. Judge May rejected these arguments, reaffirming *Tillotson*, and citing the Supreme Court's precedent: "we do not think this country…will draft its internal laws deliberately so as to circumvent the [Hague] convention in cases in which it would be appropriate to transmit judicial documents for service abroad." 2019 WL 9633377, at *3 (quoting *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 705). The reasoning Judge Vining and Judge May applied in these cases applies equally here – Plaintiff

14

cannot circumvent the Hague Convention because it appears inconvenient, particularly where Plaintiff has not even tried to comply. *See also In re Zantac (Ranitidine) Prods. Liability*, No. 20-MD-2924, 2020 WL 5501141, at *5 (S.D. Fla. Sep. 11, 2020) ("Typically, courts in this District permit alternative service only where the defendant's foreign address is unknown; the defendant has successfully evaded service; failure to permit alternative service will result in unduly long delays in litigation; or where attempted Hague Convention service has failed.") (internal citations omitted).

### 4. There is No Good Cause for Satco to Seek Alternative Service Under Rule 4(f)

The Court should follow its precedent in *Tillotson* and *LSG* and deny Satco's motion. Not only is the Hague Convention mandatory, but Satco has not shown any cause for permitting alternative service under Rule 4(f)(3) by using email or any other means. Regarding cost, Satco is involved in numerous litigations, including ITC litigation, all over the country. These complaints involve dozens of patents and numerous national and international defendants. The alleged $16,000.00 estimate for translating the Complaint is not a "significant cost" by

comparison,[3] even if cost of Hague Service was a sufficient reason to ignore the Convention, which it is not.

As for timing, Satco acknowledges that service under the Hague Convention is not likely to take more than three months – if that. Dkt. 27 at 5. The statistics that Satco cites from the Korean Central Authority show that 33% of requests were served in less than 2 months, and 40% were served in 2-4 months. *Id.* (https://www.hcch.net/en/states/authorities/details3/?aid=262).[4]

Satco alleges that in an ITC action to which it is a party, it has been attempting to serve SSC with discovery requests under the Hague Convention since December 2, 2020, suggesting that this proves an unwarranted delay in Hague service in Korea. Dkt. 27 at 5, fn. 4. Yet this statement is misleading. The actual letter request to which Satco cites was not even issued by the D.C. District Court until March 11, 2021. *See* Exhibit 2. Thus, the three-month delay occurred

---

[3]    Having chosen to sue a Korean corporation, Satco surely anticipated incurring translation costs in the course of this litigation. If SSC remains a party, Satco will face translation costs in document discovery, as well as interpreter costs at depositions and trial.

[4]    The statistics include two very different categories of documents: (1) requests served under the "Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters," which includes complaints and other documents that are merely delivered to a defendant, versus (2) requests served under the "Convention on the Taking of Evidence Abroad in Civil or Commercial Matters." Whereas documents in the second category require significantly more time and a review by the Korean Central Authority, complaints fall into the first category and are simply delivered to the Korean defendant.

within the U.S. court system, not Korea (and was apparently due, among other reasons, to typographical errors by Satco and the other ITC respondents that caused the request to have to be resubmitted to the D.C. District Court on February 16, 2021). *Id.*

In *LSG v. Nichia*, this district determined that six months of delay plus time and costs for translation was not sufficient to permit alternative service on a Japanese defendant. 2019 WL 9633377, at *3. Here, there is even less cause given the statistics cited by Satco itself, showing that it will likely only take a few months to serve SSC through the Korean Central Authority. If a plaintiff could avoid service under the Hague, without any of the circumstances justifying alternative service described in other cases, parties would immediately seek alternative service in every case "since it would always be preferable, in the present day, to simply email a complaint." *In re Zantac*, 2020 WL 5501141 at *5. That, however, is not the international comity that the Hague Convention requires, nor what the Rule 4(f) contemplated.

Furthermore, permitting Satco to serve SSC through alternative service under Rule 4(f) would not only be unconstitutional, but would also risk any judgment in this action being unenforceable. *See Mueller v. Mueller,* No. 1:15-CV-3145-WSD, 2016 WL 10567191 at *2 (N.D. Ga. Oct. 7, 2016) (where plaintiff

served a German defendant by mail and the Hague Convention applied, service was insufficient and the court lacked personal jurisdiction over the defendant); *Ballew v. Roundpoint Mortgage Servicing Corp.*, 491 Fed. Appx. 25, 26 (11th Cir. 2012) ("Valid service is a prerequisite for a federal court to assert personal jurisdiction over a defendant"); *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement; a court lacks jurisdiction over the person of a defendant when that defendant has not been served."). This is a much more significant risk of lost time and resources than the few months involved in service under the Hague Convention.

## III.  CONCLUSION

For all of the above reasons, SSC respectfully requests that Satco's motion for alternative service be denied.

Dated: March 30, 2021

Respectfully submitted,

*/s/ Preston H. Heard*
Preston H. Heard
Georgia Bar No. 476319
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Tel: (404) 862-7527
Email: preston.heard@wbd-us.com

*Attorney for Defendants*

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1</u>

I hereby certify that the foregoing document is written in 14-point Times New Roman font in accordance with Local Rule 5.1.

*/s/Preston H. Heard*
Preston H. Heard
Georgia Bar No. 476319

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

This 30th day of March, 2021.

/s/Preston H. Heard
Preston H. Heard
Georgia Bar No. 476319